C. Roy Miller, *et al.*, v. Josephine I. Ellenwood, *et al.*,

164 So. 140.

En Banc.

Opinion Filed November 12, 1935.

*Louis Ossinsky,* and *Horn & Ossinsky,* for Appellants;

*Paul W. Harvey,* for Appellee.

ELLIS, P. J.—This is an appeal from a decree of fore-closure in a suit brought by Josephine I. Ellenwood, joined by her husband, L. E. Ellenwood, and Dorothy Eiseman Roberts, joined by her husband, W. M. Roberts, against C. Roy Miller and Albie Marie Miller, joined by her husband, C. Roy Miller, in the Circuit Court for Volusia County.

The mortgage was executed in August, 1926, by C. Roy Miller and his wife, Albie Marie Miller, to Annie Klee to secure the payment of a promissory note executed by the Millers to Annie Klee for the sum of three thousand dollars payable three years after date with interest at the rate of eight per cent. per annum from maturity. The note and mortgage were of the same date.

The property mortgaged consisted of part of lot nine-teen and all of lot twenty of McBride's survey of the Her-nandez Grant in Holly Hill, Volusia County, Florida.

The condition of the mortgage was that the mortgagors should pay the debt and interest, costs and expenses, in-cluding a reasonable attorney's fee in case of foreclosure, and pay "all taxes and assessments levied or assessed on said mortgaged premises," and keep the buildings located on the place insured against loss or damage from fire.

Mrs. Klee died October 25, 1930, one year and two months after the debt became due. She left surviving her a daugh-ter, Josephine L. Ellenwood, and a granddaughter, Dorothy A. Eiseman, who later married W. M. Roberts.

Mrs. Klee left a will in which she directed the payment of her debts and funeral expenses. The residue of her estate she devised and bequeathed to her daughter, "Joseph I. Ellenwood" and her granddaughter, Dorothy A. Eise-man, in equal shares. She appointed "Josephine I. Ellen-

wood and Dorothy A. Eiseman," to be executrices of her will without bond. The two beneficiaries under the will qualified as executrices in January, 1931, and later assigned the note and mortgage to themselves.

They brought the bill to enforce the lien of the mortgage in December, 1933, alleging that they were the owners and holders of the note and mortgage; that Mrs. Miller was the owner of the fee simple title to the mortgaged premises; that she had failed to pay the principal of the note and had failed to pay the interest since August, 1933.

The bill alleged that Annie Klee, in January, 1930, had paid a tax certificate issued to the State for taxes of 1926, and paid the taxes for 1927, 1928 and 1929. That item amounted to $160.35 on which interest accumulated amounting to $39.53 from January, 1930, to December, 1933. It is also alleged that Josephine Ellenwood, in November, 1930, at the request of the defendants paid the taxes then due amounting to $117.50, and obtained a tax certificate therefor, and interest amounting to $28.77 had accumulated thereon.

In 1932 Josephine Ellenwood paid the taxes at request of the defendants which amounted to $101.80, with interest; that the property was sold to the town of Holly Hill for the taxes of 1927, and a certificate of sale was issued therefor to the town, and L. E. Ellenwood, husband of Josephine and as her agent, redeemed that certificate amounting to $134.25, and interest in the sum of $40.32 had accumulated thereon.

Three other certificates for unpaid taxes due to the town of Holly Hill as follows: No. 1788 for $22.04; 1789 for $20.37, and No. 1790 for $126.30, were issued to the town and assigned to L. E. Ellenwood as agent for Josephine and her co-complainant. The amount paid on that account

was $168.71 on which interest amounting to $60.55 had accumulated.

A portion of the mortgaged premises was sold to the town in 1929 and tax certificate No. 76 issued. That certificate was assigned to L. E. Ellenwood as agent for the complainants, amounting to $36.30; likewise certificate No. 77 was issued to the town and assigned to L. E. Ellenwood as agent for the complainants. The amount involved in that transaction was $255.11; the two certificates showing the sum of .$291.41 due for taxes, on which interest in the sum of $87.56 had accumulated.

The bill alleges that in April, 1930, Annie Klee paid at the request of the defendants the taxes due to the town of Holly Hill for the year 1930 amounting to $231.64, the interest on which amounted to $66.96 to December, 1933; that Josephine Ellenwood, in April, 1931, at the request of the defendants, paid the taxes on the property due to the town of Holly Hill for the year 1931, which amounted to $266.99, the interest on which to December, 1933, amounted to $56.61.

Those several sums, it is alleged, were paid at the request of the defendants by the complainants and constitute a lien on the property of equal dignity and priority to the other indebtedness secured by the mortgage.

It is also alleged that certain assessments for improvements made by the town of Holly Hill for watermain assessments amounting in one case to $50.66, and in another to $101.31, have not been paid by the defendants, nor have they paid the taxes due to the town for the year 1932, amounting to $258.08, and a tax certificate was issued to the town, No. 109, for that amount. Complainants allege that the failure to pay such assessments and taxes constituted a violation of the covenants of the mortgage.

In the decree the various items of taxes and assessments were considered and allowed as being secured by the mortgage and that the complainants should recover the sums paid from the proceeds of the sale of the mortgaged premises insofar as the same had not been discharged.

In the progress of the cause the defendants moved to dismiss the bill because the owners of the note and mortgage had not brought the suit by their next friend but had merely joined their husbands as parties complainant. The complainants sought to amend the form of the bill to meet that criticism, but the court denied the motion.

The objection that the married women should have sued by their next friends instead of merely joining their husbands as parties complainant is not supported by the reason which exists for such a rule when the action is one on contract and two or more persons are joined as plaintiffs and a joint obligation or indebtedness to all the plaintiffs is alleged. In such case all the plaintiffs must be shown to be entitled to recover or none can recover.

No reason for such rule exists in this case. This is a suit in equity upon an obligation which does not run to all the parties named as complainants, but merely to the executrices of the will of Mrs. Klee which the bill clearly discloses. It is a proceeding to enforce a lien upon real estate created by a mortgage executed to secure the payment of a debt due to two married women and to preserve the security pledged from impairment by the accumulation of tax liens against it. In other words, the defendants mortgaged the land as security for the payment of the debt and covenanted to pay all taxes assessed against it; that the value of the security pledged should not be impaired by tax liens for unpaid taxes.

In the case of Edgar V. Bacon, 97 Fla. 679, 122 Sou. Rep. 107, Mr. Justice BROWN, speaking for the Court, said:

"As a general rule, in equity, a married woman sues by next friend. There are certain statutory exceptions to this general rule, among which are suits governed by Sections 4203, 4204, 5870, 5871, Comp. Gen. Laws. Where the general rule applies, and she sues by next friend, such next friend may very properly be the husband, when he is not adversely interested. Wood v. Wood, 56 Fla. 882, 47 So. 560; Smith v. Smith, 18 Fla. 789; Taylor v. Brown, 32 Fla. 334, 13 So. 957, 1 Beach, Mod. Equity Prac. Sec. 51. And, as held in the last cited case, the objection to the failure of a married woman to sue in equity by a next friend will be deemed to have been waived, if not made in the trial court."

An anomalous situation exists in this case. It is a suit in equity by married women who did not sue by next friends, but merely joined their husbands respectively as complainants. The husbands have no adverse interests to their wives. The defendants insisted upon the suit being brought by next friends of the married women. The complainants sought to obtain leave from the court before answer filed to amend the bill so that the bill would declare the suit to be brought by next friends of the married women as well as in their names joined by their respective husbands.

Under the New Chancery Act, Chapter 14658, Laws 1931, the complainants had the right to so amend their bill at that stage of the proceedings. Sec. 29 Chancery Act. The bill was not sworn to and the amendment was not a matter of substance. Sec. 4902 C. G. L. 1927.

The note and mortgage in this case were property acquired by the married women in one instance after marriage and in the other before marriage and under the Constitution

and laws of this State constitute their separate property. See Sec. 1, Art. XI, Const. 1885.

In many states where the statutes authorize the acquisition by married women of separate property the common law rule which vested the chattels of the wife in the husband is deemed to be abrogated and the married woman is authorized to sue for her property in her own name. See Hutton v. Williams, 35 Ala. 503; Wortham v. Gurley, 75 Ala. 356; Berlin v. Cantrell, 33 Ark. 611; Evans v. DeLay, 81 Cal. 103, 22 Pac. Rep. 408; Harris v. Brain, 33 Ill. App. 510; Read v. Earle, 12, Grays (Mass.) 423; Robinson v. Woodford, 37 W. Va. 377.

Even in those states where the married woman may not sue alone in such cases she may sue by her next friend, or join her husband in the action if she elects to do so. See Herzberg and New v. Sachse, 60 Md. 426; Barr. v. White, 22 Md. 259.

In Pennsylvania it was held that a suit to recover damages for injury to the wife's property should be brought in the name of the husband and wife for the use of the wife. Keeney v. Good, 21 Pa. St. 349.

At the High Court of Chancery in England prior to 1755 the rule prevailed that a suit relative to the separate estate of a wife should be filed by her *prochein amy*. If, however, it be instituted by the husband and wife jointly the court will secure the fund for the wife in the name of trustees. See Griffith v. Hood, 2 Vesey Sr. 451, cited in Smith v. Smith, *supra*.

In view of the constitutional provision in this State securing to a feme property acquired by her before or after marriage as her separate property no trustee is necessary to secure the property to her and as the *prochein amy* or next friend is named only with the feme's consent the joining

of her husband with her in the suit answered all the formal and technical requirements of the common law. It is sufficient under the law of this State which secures to her the property acquired by her as her separate property to join her husband in a suit in relation to it where he is not adversely interested.

As pointed out in the case of Edgar v. Bacon, *supra,* the rule is different in actions at law where the husband must be joined as a co-plaintiff with the wife in all suits to enforce the personal or property rights of the wife not as next friend but as husband.

Where under the common law a feme sued in equity she was required to sue by next friend because of the implied adverse interest of the husband in whom the title to her property vested, placing him therefore in an apparently adverse position to his wife with reference to her property, but even in such case where the husband is joined as husband and not next friend the court will secure her property to her by the appointment of a trustee.

If the Chancellor's order denying the complainants, married women, to amend their bill by naming their husbands as next friends was technically erroneous, it is not an error of such character affecting the substance and merits of the controversy as would require the undoing of all that was considered and adjudged in the cause. Besides the application to amend was merely an announcement by the married women of their consent to the suits being maintained by their next friend and they are bound by such consent in all particulars relating to the rule requiring such suits to be by next friend. As the husbands of the married women were already joined as parties to the suit and the formal, technical requirements of the common rule being thereby substantially complied with and no injury to the defend-

ants occurred and no rights of theirs being affected the order of the Chancellor denying the complainants' the right to amend in the particular requested was immaterial and produced no injury to nor embarrassment of the defendants.

There is no merit therefore in the first question of law presented. As to the other questions presented which relate to the allowance to the complainants of the taxes paid upon the premises by them and the. husband of one of them for them, and the issuing of tax certificates therefor, we perceive no merit in such questions. The suit was not one to enforce a mortgage and to enforce the so-called lien of tax certificates at the same time. It was merely a bill to enforce a mortgage lien which covered not only the principal debt as shown by the promissory note but all taxes and assessments against the mortgaged property which the complainants were required to pay in order to protect the security. The mortgagors were required to pay such taxes by the terms of the mortgage. They failed to do so. The mortgagee, Mrs. Klee, in one or two instances, and her legatees in other instances, paid the taxes, obtained tax certificate evidences of such payments. It is of no significance that Mr. Ellenwood as agent for his wife, paid such assessments and liens. The mortgaged property became under the terms of the mortgage charged with the lien of such payments.

The original mortgagee was Mrs. Klee. The mortgage was executed in 1926. No taxes were paid by her or the complainants prior to that time. All taxes which Mrs. Klee paid and all that were paid by the two married women who became owners of the mortgage were for years subsequent to the date of the mortgage. The amount of the debt was increased by the payment of taxes by Mrs. Klee and that debt so increased continued as an obligation of the defend-

ants under the mortgage to the complainants as legatees under Mrs. Klee's will and grew in size by each payment by them of taxes assessed against the property which the defendants were bound to pay.

The rule has existed for a great while that the mortgagee should be allowed the amount paid by him on account of taxes on the mortgaged property in his foreclosure suit. See Jackson v. Relf, 26 Fla. 465, 8 South. Rep. 184; Clermont-Minneola Country Club v. Coupland, 106 Fla. 111, 143 South. Rep. 133.

The Chancellor reviewed all the evidence in the case and from our examination of it we fail to discover that his findings were incorrect. As to the deficiency decree that is a matter yet to be determined by the Chancellor upon application for it by complainants if they should deem it expedient and proper so to do.

If the property is sold under the decree and defendants are divested of title they would not be materially interested in the existence of any tax liens upon the lands even if it should be true that in view of these proceedings the complainants should claim to hold any such liens on the land by virtue of their tax certificates, which, according to our view of the case became merged in the mortgage lien. See 3 Jones on Mortgages (7th Ed.) 175,

The decree of the Chancellor is affirmed.

WHITFIELD, C. J., and BROWN, BUFORD, and DAVIS, J. J., concur.

TERRELL, J., not participating.